```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

KEITH CRABBS,

      Plaintiff,

  vs.                              Civil Action 2:12-cv-1126
                                    Judge Watson
                                    Magistrate Judge

**SHERIFF ZACH SCOTT,** *et al.*,

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of *Plaintiff Keith Crabbs' Motion to Compel Discovery from Defendant Zach Scott* ("*Plaintiff's Motion*"), Doc. No. 38, defendant Sheriff Zach Scott's response, *Defendant Scott's Memorandum in Opposition to Plaintiff's Motion to Compel Discovery* ("*Defendant's Response*"), Doc. No. 48, and *Plaintiff's Reply*, Doc. No. 49. For the reasons that follow, *Plaintiff's Motion* is **GRANTED in part** and **DENIED in part**.

I.    Background

The *Complaint*, Doc. No. 1, alleges that, in December 2010, plaintiff was indicted in Franklin County, Ohio, on a charge of voluntary manslaughter; he surrendered to the Franklin County Sheriff, and was thereafter released on bond. *Id*. at ¶¶ 8, 13-14, 17. A criminal trial against plaintiff commenced on March 12, 2012 in the Franklin County Court of Common Pleas. *Id*. at ¶ 18. On the second day of trial, plaintiff's bond was revoked and he "was returned to custody of Defendant Scott for the remainder of the trial." *Id*. at ¶¶

20-22. On March 16, 2012, a jury acquitted plaintiff and the trial judge issued an "order directing that Plaintiff be immediately released from custody." *Id.* at ¶¶ 26-27. Plaintiff was then returned to "the jail," where he was detained until DNA was forcibly collected from him. *Id.* at ¶¶ 28-34. Plaintiff's DNA was then recorded in state and national databases. *Id.* at ¶¶ 35-37.

The *Complaint* alleges that plaintiff's detention and the collection of his DNA when there were no criminal charges pending against him and he was not under suspicion for the commission of any crime constitutes a violation of his rights under the Fourth and Fourteenth Amendments. Plaintiff also asserts a claim of retaliation in contravention of his rights under the First Amendment. The *Complaint* names as defendants officials of the Franklin County Sheriff's Department, the Ohio Attorney General, and the Superintendent of the Ohio Bureau of Criminal Investigation and Identification. Defendant Scott is sued in his official and individual capacities. *Id.* at ¶ 2.

**II.   Standard**

Rule 37 of the Federal Rules of Civil Procedure authorizes a motion to compel discovery when a party fails to provide a proper response to an interrogatory submitted under Rule 33. Fed. R. Civ. Pro. 37(a)(3)(B). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-cv-273, 2006 U.S. Dist. LEXIS 68779, at *2 (S.D. Ohio Sept. 25,

2

2006) (citing *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 154, 159 (D.D.C. 1999)).

Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970). However, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)). *See also Lewis*, 135 F.3d at 402 (determining the proper scope of discovery falls within the broad discretion of the trial court). In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg. Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

Finally, the party moving to compel discovery must certify that he "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). *See also* S.D. Ohio Civ. R. 37.2. This prerequisite has been met in this case.

3

**III. Discussion**

Plaintiff seeks to compel response by defendant Scott to Interrogatory No. 5, which asks the following: "With regard to each person from whom, following acquittal, DNA was collected and processed pursuant to your policy or policies," identify (1) the person's "full name, SSN, last known business and/or residence address and date of birth," (2) "the date of acquittal and the date the DNA was collected and processed," and (3) "the charge for which the individual was acquitted." *Plaintiff's Motion*, pp. 4-5.  The parties disagree whether the information sought is relevant.  Plaintiff argues that the requested information is relevant to his Fourth Amendment claims because it will show "that the seizure [of plaintiff's DNA] was the result of animus." *Id.* at p. 7.  According to plaintiff, "[i]f it is found that [he] is the only acquitted defendant from whom DNA was seized following acquittal and order of release, the implication that he was targeted by Defendants is virtually inescapable and goes directly to the elements of proof of intentional deprivation of constitutional rights." *Id.* (emphasis omitted).  Plaintiff also appears to argue that the information sought may reveal a pattern or practice of constitutional deprivations. *See id.* at p. 8.  Defendant Scott argues, without further explanation, that the information sought is "not germane to the issues presented in this case or the named defendants." *Defendant's Response*, p. 3.  Defendant Scott also argues that response to the interrogatory would be unduly burdensome. *Id.* at pp. 3-5.

The Fourth Amendment to the United States Constitution, binding

4

on the States through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  "'[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner.'" *Maryland v. King*, 133 S.Ct. 1958, 1969 (2013) (quoting *Schmerber v. California*, 384 U.S. 757, 768 (1966)). "As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Id*. (quotations omitted) (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995)). "In some circumstances, such as '[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the [United States Supreme] Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable.'" *Id*. (quoting *Illinois v. McArthur*, 531 U.S. 326, 330 (2001)). "Even if a warrant is not required, a search is not beyond Fourth Amendment scrutiny; for it must be reasonable in its scope and manner of execution." *Id*. at 1970.

In the case presently before the Court, plaintiff argues that the requested information is relevant to proving animus and the "element[]" of intentional deprivation of his Fourth Amendment rights. *Plaintiff's Motion*, p. 7. Plaintiff's arguments notwithstanding, however, the motivation underlying a search is not relevant to whether a search is "reasonable in its scope and manner of execution." *See*

5

*King*, 133 S.Ct. at 1970.  Animus or intentional deprivation is, however, relevant to plaintiff's claim for punitive damages.  *See Complaint*, p. 15.  Further, evidence of a pattern or practice of deprivations is relevant to plaintiff's official capacity claim against defendant Scott.  *See id.* at ¶¶ 2, 41.  Plaintiff's official capacity claim is, in all respects other than name, to be treated as a suit against Franklin County.  *See Briner v. City of Ontario*, 370 F. App'x 682, 699 (6th Cir. 2010) ("An official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (internal quotation marks and alterations omitted).  To prevail on his § 1983 suit against this governmental entity, plaintiff must prove that a constitutional violation actually occurred and that it was a policy or custom of the county that was the "moving force" behind the constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  The information sought by plaintiff is certainly relevant to this inquiry.

Having determined that the information sought by plaintiff is relevant, and within the ambit of discoverable information, the Court must now consider defendant Scott's arguments that the request is unreasonable and that response to the interrogatory would be unduly burdensome.  *Defendant's Response*, pp. 3-5.  Rule 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  However, courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.  Fed. R. Civ. P. 26(b)(2); *Info-Hold v.*

6

*Sound Merch., Inc.*, 538 F.3d 448, 457 (6th Cir. 2008) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). The Federal Rules of Civil Procedure instruct courts to limit discovery where its "burden or expense . . . outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). "Although a plaintiff should not be denied access to information necessary to establish h[is] claim, neither may a plaintiff be permitted 'to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" *Surles*, 474 F.3d at 305 (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)).

Defendant Scott argues that plaintiff's discovery request is unreasonable and unduly burdensome because (1) plaintiff's request is not limited by time, (2) the Franklin County Sheriff's computer and record keeping systems are designed to facilitate jail business, not discovery, and (3) the information plaintiff seeks is in paper files and would require a "monumental" expenditure of time and resources to produce. *Defendant's Response*, pp. 3-4. Defendant Scott further argues that, if plaintiff's request seeks records after July 1, 2011, production will require reviewing a minimum of 1539 inmate slates, containing at least 3000 pages, and comparing the inmate slates to identification master files. *Id.* This task, defendant Scott argues, "will consume inordinate man hours and resources of the Franklin County Sheriff." *Id.* at p. 5.

7

Defendant Scott has persuaded the Court that plaintiff's discovery request is overly broad.  Specifically, plaintiff's request is not limited by time, and technical compliance with the request, which potentially seeks information about every acquitted criminal defendant who has ever been in the custody of the Franklin County Sheriff, would undoubtedly require an expense that far outweighs any likely benefit.  Plaintiff does not address a potential time limitation in *Plaintiff's Reply*.  The Court will therefore limit plaintiff's request, for purposes of *Plaintiff's Motion*, to information relating to those persons whose DNA was collected and processed on or after July 1, 2011, *i.e.*, the date, the parties agree, that Ohio's DNA collection law changed. *See* O.R.C. § 2901.07(B)(1). *Defendant's Response*, p. 3.

In arguing that the current request is also unduly burdensome, defendant Scott assumes that plaintiff's interrogatory has been limited to those persons whose DNA was collected and processed since July 1, 2011.  However, defendant Scott has not demonstrated that the interrogatory, as so limited, would be unduly burdensome to answer.

First, defendant Scott's uncorroborated and undocumented warnings of "monumental" expenditures of resources and time are insufficient to establish an undue burden.  Second, the mere fact that a party's records may not be geared to the demands of discovery does not alone insulate those records from all discovery efforts and does not itself establish that the current discovery request is unduly burdensome.  Furthermore, it is not apparent to the Court that the burden or expense of reviewing approximately 3,000 pages of information and

8

comparing that information with inmate master files does not outweigh its likely benefit, especially considering the constitutional rights at issue in this case.

Accordingly, *Plaintiff's Motion*, Doc. No. 38, is **GRANTED in part** and **DENIED in part**.  Defendant Sheriff Zach Scott is **ORDERED** to respond to plaintiff's Interrogatory No. 5, limited to those persons whose DNA was collected and processed on or after July 1, 2011.


August 9, 2013                                  *s/Norah McCann King*
                                            Norah M<sup>c</sup>Cann King
                                      United States Magistrate Judge