UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Keith Crabbs,

    Plaintiff,

    v.                                         Case No. 2:12–cv–1126

Sheriff Zach Scott, *et al.*,               Judge Michael H. Watson

    Defendants.

## OPINION AND ORDER

This Court's September 30, 2014, Opinion and Order on the pending motions for summary judgment allowed two of Plaintiff's[1] claims to proceed: (1) Plaintiff's Fourth and Fourteenth Amendment claim for unlawful search and seizure, and (2) Plaintiff's Fifth and Fourteenth Amendment claim for unlawful detention. Both claims are based on the fact that Plaintiff's DNA was collected at the Franklin County Correctional Center after he had been acquitted of voluntary manslaughter. Importantly, both claims are *Monell* claims against Sheriff Scott in his official capacity.

As part of that ruling, the Court denied sovereign immunity to Sheriff Scott. The Court also concluded that a reasonable juror could find from the evidence that the Sheriff's Office had a policy permitting the post-acquittal collection of

---

[1] The original Plaintiff in this case was Keith Crabbs. Anne Crabbs, Plaintiff's mother, was substituted as Plaintiff, per the Sixth Circuit's opinion, after Keith Crabbs passed away. ECF No. 153. The Court's references to "Plaintiff" herein apply either to Keith Crabbs or Anne Crabbs as context requires.

DNA from felony arrestees who were placed on an ID hold.[2] The Court so found after reviewing Ohio Revised Code § 2901.07, memoranda drafted by Deputy Chief Barrett, and the Sheriff's Office's ID holds policy. The Court reasoned that Ohio Revised Code § 2901.07 required that DNA be collected upon intake of a felony arrestee. Deputy Chief Barrett, who had final policy-making authority on the subject matter, issued a memorandum on June 27, 2011, concerning the implementation of the statute. The memorandum stated that the Sheriff's Office will collect DNA only from persons 18 years or older arrested on a felony charge by deputies of the Sheriff's Office or by those with whom the Sheriff's Office has a contract. Jun. 27, 2011 Memorandum from Mark J. Barrett to All Supervisors-FCCC 1 & FCCC 2; Medical Personnel, ID Personnel, ECF No. 67-4 ("2011 DNA Collections Memo"). The 2011 DNA Collections Memo states that DNA is to be collected during intake. *Id*. The ID holds policy states that if a prisoner is not processed during intake, the prisoner will be placed on an ID hold and will be processed through ID as part of the release process. Franklin County Sheriff's Office AR830 Intake Procedures 13.4.3, PAGEID # 461, ECF No. 67-4. An April 15, 2006, memorandum by Deputy Chief Barrett states that ID holds alone will not be used to keep an inmate in jail but that if an inmate who is ready to be released is placed on an ID hold, "the booking/slating supervisor shall order the on-duty ID tech to process the inmate ASAP." Apr. 15, 2006 Memorandum from

---

[2] The Court also concluded that a reasonable juror could find an official policy permitting detention of the inmate for purposes of collecting said DNA.

Deputy Chief Barrett to All Supervisors-FCCC 1 & FCCC 2, ECF No. 89-1 ("ID Holds Memo"). The ID Holds Memo makes no distinction between inmates whose charges were disposed of pursuant to conviction versus acquittal. *Id.*

The Court concluded that a reasonable jury could find that, read together, the 2011 DNA Collections Memo and the ID Holds Memo create an official policy of collecting DNA at intake from anyone 18 years or older arrested on a felony charge by deputies of the Sheriff's Office or those with whom the Sheriff's Office has a contract, except that if the inmate cannot be processed during intake, they will be placed on an ID hold, and DNA will be collected as part of the release process regardless of whether the inmate is convicted or acquitted. Op. and Order 29, ECF No. 103. In other words, a reasonable juror could find the existence of an official policy that permits the post-acquittal collection of DNA from felony arrestees who were placed on an ID hold. *Id.* Moreover, the Court concluded that, while vague, Sheriff Scott's testimony could reasonably be interpreted as verifying that such DNA collection is within policy.[3] *Id.* at 30.

Although the Court noted that the 2011 DNA Collections Memo applied to felony arrestees, *id.* at 27, the Court phrased the genuine dispute of material fact as "whether the Franklin County Sheriff's Office has an official policy authorizing

---

[3] Although Plaintiff argues that Sheriff Scott repeatedly conceded throughout this litigation that Plaintiff's actual collection of DNA was within the county's policy, it is clear from Sheriff Scott's deposition testimony that neither he, nor, frankly anyone whose testimony was presented to this Court, appreciated the fact that Plaintiff was not arrested for a felony and was thus not a "felony arrestee" at the time his DNA was collected.

the collection of DNA from acquitted persons after acquittal but prior to release when such inmates are on an ID hold . . . ," *id.* at 30. A more accurate phrasing, which the Court now adopts, is that there is a genuine dispute of material fact as to whether the Franklin County Sheriff's Office has an official policy authorizing the post-acquittal collection of DNA from *felony* arrestees who were on an ID hold.

Sheriff Scott appealed the sovereign immunity portion of the Court's Opinion and Order. That ruling was affirmed on appeal, and the appellate decision highlighted an interesting aspect of this case. The Sixth Circuit pointed out that Plaintiff's DNA was not collected in connection with his arrest for voluntary manslaughter but rather in connection with his bond revocation. As his DNA was not collected in connection with a felony arrest, the Sixth Circuit noted that § 2901.07 did not even apply to Plaintiff, let alone mandate the collection of his DNA. *Crabbs v. Scott*, 786 F.3d 426, 430 (6th Cir. 2015).

That observation has spawned additional briefing in this Court. First, Plaintiff renewed his motion for partial summary judgment, arguing the Sixth Circuit's Opinion and Order conclusively decided that Plaintiff's Fourth Amendment rights were violated by the collection of his DNA. Mot., ECF No. 112. Plaintiff argued that because § 2901.07 did not mandate the collection of Plaintiff's DNA as he was not a felony arrestee, the collection was necessarily unconstitutional. This Court rejected that argument. The Court concluded that although § 2901.07 did not apply in this case because Plaintiff's DNA was not

collected in connection with his arrest for a felony offense, and thus § 2901.07 did not *mandate* the collection of Plaintiff's DNA, it does not follow that any statute or official policies *permitting* the post-acquittal collection of a felony arrestee's DNA were necessarily unconstitutional. Op. and Order 4–5, ECF No. 129. The Sixth Circuit made the same observation. *Crabbs v. Scott*, 786 F.3d at 431 ("That does not make those policies unconstitutional or otherwise illegal, to be clear.").

Second, this Court noted that the alleged policy[4] was designed to implement § 2901.07 and permitted the collection of DNA from *felony arrestees*. *See* Op. and Order 6, ECF No. 129. The Court stated that it may not be reasonable to interpret the policy as permitting the collection of DNA from those in Plaintiff's situation—*i.e.*, from non-felony arrestees. *Id*. ("[I]t is perhaps unreasonable to interpret the Defendants' alleged written policies . . . as authorizing Defendants' conduct in this case."). The Court did not make a conclusive finding on the issue at that time but rather put Plaintiff on notice of its intent to grant summary judgment to Defendant pursuant to Federal Rule of Civil Procedure 56(f) due to the lack of a genuine dispute of material fact as to whether an official policy existed authorizing the collection of Plaintiff's DNA. The Court ordered Plaintiff to brief whether summary judgment should be granted to

---

[4] Again, the Court makes no factual determination as to the actual existence of such a policy. That is a genuine dispute of material fact.

Defendant on the issue of *Monell* liability due to a lack of a policy that permitted the collection of Plaintiff's DNA, and both parties submitted additional briefing.

After careful consideration of the briefing, the Court concludes that Defendant is entitled to summary judgment. The alleged policy in this case of permitting the post-acquittal collection of DNA from felony arrestees on ID holds says nothing about permitting the collection of DNA from non-felony arrestees such as Plaintiff, either pre- or post-acquittal. Indeed, Plaintiff never argues there is an official policy that permits the collection of DNA from non-felony arrestees, cites to no evidence of the existence of such a policy, and Defendant argues there was none. Resp. 11, ECF No. 133 ("[T]he collection at issue was not authorized . . . by any official policy of Defendant."). The Court finds that there is no genuine dispute of material fact as to whether the Sheriff's Office had a policy that permitted the collection of DNA from non-felony arrestees such as Plaintiff. As such, Plaintiff cannot rest a *Monell* claim on the existence of a policy that permitted the collection of his DNA.

As any *Monell* claim must be based on the existence of an official policy,[5] Plaintiff must rely on the alleged policy permitting the post-acquittal collection of DNA from felony arrestees on ID holds. Although that policy, assuming it exists, did not permit the collection of Plaintiff's DNA because Plaintiff was not a felony arrestee, there is at least a genuine dispute of material fact about whether that

---

[5] The Court previously concluded that there is no genuine issue of material fact as to whether there was a custom or practice of taking DNA from acquitted persons. Op. and Order 30 n.13, ECF No. 103.

policy was misapplied to Plaintiff and whether his DNA was improperly collected pursuant to that policy. For purposes of this Opinion and Order, the Court assumes: (1) that the Sheriff's Office has a policy permitting the post-acquittal collection of DNA from felony arrestees on ID holds, (2) that such a policy was unconstitutional,[6] and (3) that the nurse and/or Sheriff Deputies Thompson and Hoffman (none of whom are defendants in this case) misapplied such a policy to Plaintiff as the authority for the collection of his DNA. The question is then whether the misapplied, unconstitutional policy was the "moving force" behind Plaintiff's constitutional violation such that the municipality may be held liable for that violation. *Powers v. Hilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (internal quotation marks and citations omitted).

A policy is the "moving force" behind a constitutional violation when it is the "direct causal link" for the violation. *Id.* Traditional tort concepts of causation inform this analysis, and to be considered the "moving force" behind a constitutional violation, a municipal policy must be both the cause in fact and the proximate cause of the violation. *Id.* at 608.

Cause in fact is assessed using the "but for" test, *id.*, and Plaintiff could satisfy this test. As noted above, there is at least a genuine dispute of material fact as to whether the policy was improperly administered to Plaintiff as the

---

[6] If the policy is constitutional and was simply negligently administered as to Plaintiff, no *Monell* liability lies. *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("The occasional negligent administration of an otherwise sound policy is not sufficient to impose municipal liability." (internal citation omitted)).

authority for the collection of his DNA. Thus, a reasonable juror could find that notwithstanding the existence of the Ohio statute, Plaintiff's DNA would not have been collected after his acquittal "but for" the municipal policy.

The bigger issue is whether the policy was the proximate cause of Plaintiff's constitutional violation. Proximate cause is a legal issue suitable for decision on summary judgment. *Devonshire v. Johnston Grp. First Advisors*, 166 F. App'x 811, 814 (6th Cir. 2006). The inquiry is "a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the §1983 plaintiff as a result of the defendant's conduct. Even if an intervening third party is the immediate trigger for the plaintiff's injury, the defendant may still be proximately liable, provided that the third party's actions were foreseeable." *Id.* at 609.

In this case, the policy did not actually authorize the collection of Plaintiff's DNA. Rather, the nurse and/or Sheriff Deputies Thompson and Hoffman served as intervening third parties and were the immediate trigger for Plaintiff's injury because it was their misapplication of the policy that resulted in Plaintiff's injury. Thus, the policy is the proximate cause only if the third parties' misapplication of the policy to a non-felony arrestee was reasonably foreseeable.

The Court concludes that it was not reasonably foreseeable that the policy would be misapplied to a non-felony arrestee. The policy clearly applies only to felony arrestees. The first 2011 DNA Collections Memo states in the subject that it refers to DNA collections "pursuant to R.C. 2901.07(B)(1)[.]" 2011 DNA

Collections Memo, ECF No. 67-4, PAGEID # 435. The first paragraph quotes the statute as requiring that DNA be collected from certain persons arrested "for a felony offense . . . ." *Id.* It goes on to state, "[t]herefore, . . . for purposes of R.C. section 2901.07(B)(1), we (Sheriff's Office) will only collect DNA specimens from persons eighteen years of age or older arrested on a felony charge . . . ." *Id.* Likewise, the intake procedures list the offenses for which prisoners "shall be taken to the Identification Bureau for further processing[,]" and that list includes felons but does not include those arrested for bond violations. Intake Procedures 5.4, ECF No. 67-4, PAGE ID # 455. Nothing about the 2011 DNA Collections Memo or the intake procedures makes it reasonably foreseeable that the policy would be misapplied to someone arrested on a bond violation. Nor has Plaintiff offered any other evidence as to whether a misapplication of the policy was reasonably foreseeable.

As a result, the unforeseen misapplication of the policy by third parties served as a superseding cause of the injury which breaks the chain of causation, even though the municipality's creation of the policy "was a substantial factor in bringing about the harm." *Powers*, 501 F.3d at 610 (internal quotation marks and citation omitted). Accordingly, in this case, any municipal policy that permitted the post-acquittal collection of DNA from felony arrestees on ID holds was not, as a matter of law, the proximate cause of the collection of Plaintiff's DNA.

This does not mean that a policy permitting the post-acquittal collection of a felony arrestee's DNA is constitutional. Rather, it simply means that Plaintiff,

as a non-felony arrestee to whom the alleged policy was perhaps misapplied, is not the proper person to sue the municipality over the constitutionality of such a policy.

In sum, because the municipality had no policy authorizing the collection of DNA from non-felony arrestees, and because the originally challenged policy was not the proximate cause of any constitutional violation, summary judgment must be granted to Defendant on Plaintiff's *Monell* claim for unlawful search and seizure. Because his unlawful detention claim was premised on his unlawful search and seizure claim, summary judgment is proper on that claim as well. Accordingly, pursuant to Federal Rule of Civil Procedure 56(f)(2), the Court **GRANTS** judgment for Defendant on Plaintiff's remaining claims. The Clerk shall enter judgment for Defendant and terminate this case.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**